UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION

| ARNOLD DALE COLLINS, et al., | ) | |
|---|---|---|
| Plaintiffs, | ) | |
| v. | ) | Case No. 4:15-CV-00743-AGF |
| VEOLIA ES INDUSTRIAL SERVICES, INC., | ) | |
| Defendant. | ) | |

## MEMORANDUM AND ORDER

This matter is before the Court on Defendant Veolia ES Industrial Services, Inc.'s ("Veolia") motion (Doc. No. 13) to dismiss Counts III–VIII of Plaintiffs' complaint, alleging breach of contract, quantum meruit, and unjust enrichment in connection with work performed by Plaintiffs Arnold Dale Collins ("Collins") and Mark Neidert ("Neidert") as Veolia's employees. For the reasons set forth below, Veolia's motion shall be granted.

## BACKGROUND

Plaintiffs Collins and Neidert originally brought this action in state court to recover for unpaid travel time to and from their assigned work site in the course of their employment with Veolia, an environmental and industrial services corporation. Plaintiffs allege that, beginning in 2009, they were required to meet at the Veolia facility in Wood River, Illinois and travel approximately 59 miles to a work site in Herculaneum, Missouri. Although the round-trip travel time was at least two (2) hours each day,

Plaintiffs allege that between 2009 and 2013 they were only compensated for one (1) hour of travel per day. Plaintiffs assert that Veolia's failure to pay for the full amount of travel time violated the Fair Labor Standards Act ("FLSA") and breached employment contracts between the parties. Each Plaintiff also asserts quantum meruit and unjust enrichment claims.

Veolia filed a notice of removal on May 8, 2015, citing federal-question jurisdiction as the basis for removal. According to Veolia, Counts I and II of Plaintiffs' complaint arise under federal law because they allege violations of the FLSA, and federal jurisdiction exists over the remaining state law claims either because these claims are preempted by § 301 of the Labor Management Relations Act ("LMRA"), 29 U.S.C. § 185(a), or because they are so closely related to the FLSA claims as to warrant supplemental jurisdiction pursuant to 28 U.S.C. § 1367. Veolia answered the FLSA claims (Counts I and II) but has moved to dismiss the state law claims (Counts III–VIII).

## ARGUMENTS OF THE PARTIES

Veolia asserts Plaintiffs' state law claims are preempted by § 301 of the LMRA because resolution of these claims depends upon the meaning of a collective bargaining agreement. Veolia argues that in order to resolve Plaintiffs' breach of contract claims (Counts III–IV), the Court must interpret a Collective Bargaining Agreement ("CBA")[1]

---

[1] Veolia attached two versions of the CBA as exhibits to its memorandum in support of the motion to dismiss. Both were executed by the International Union of Painters and Allied Trades, ALF-CIO, and Veolia. The current CBA states that it became effective on November 1, 2012 and remains so through October 31, 2017. The preceding agreement states that it was in effect from November 1, 2007 through October 31, 2012. (Doc. No. 14, Exs. 2 & 3.)

governing Plaintiffs' employment with Veolia. According to Veolia, the CBA sets out the terms and conditions of Plaintiffs' employment, including compensation rates, overtime, and travel pay. Moreover, because Plaintiffs were represented by a sole and exclusive bargaining representative during the relevant time period, Veolia contends the CBA is the only contract that could have been breached. Veolia argues Plaintiffs' equitable claims of quantum meruit (Counts V–VI) and unjust enrichment (Counts VII–VIII) depend on the same analysis of the CBA that is necessary to resolve the breach of contract claims.

Veolia further argues that even if Plaintiffs were to recast their state law claims as claims for violation of the CBA under § 301 of the LMRA, dismissal would nonetheless be required for two reasons. First, Veolia argues that exhaustion of administrative and contractual remedies is a prerequisite to any LMRA action for breach of a CBA. Veolia contends that the CBA governing Plaintiffs' employment provides a grievance mechanism which Plaintiffs failed to exhaust. Second, Veolia asserts Plaintiffs' claims are untimely under the six-month statute of limitations for LMRA claims.

Veolia also urges that Plaintiffs' equitable claims (Counts V–VIII) should be dismissed for the alternative reason that Plaintiffs' employment was governed by an existing contract. Veolia argues that the quasi-contractual remedies of quantum meruit and unjust enrichment are only available in the absence of an express contract between the parties.

In response, Plaintiffs contend that their state law claims arise independently from the CBA and therefore are not preempted by the LMRA. According to Plaintiffs,

"[w]hether Defendant actually paid Plaintiffs for time worked does not require the Court to interpret the terms of the CBA." (Doc. No. 17 at 2.) Further, because Plaintiffs contend that the LMRA does not govern their claims, Plaintiffs also argue that they are not subject to the administrative exhaustion requirement or the six-month statute of limitations applicable to LMRA claims. With respect to the equitable claims for quantum meruit and unjust enrichment, Plaintiffs assert that the existence of a contract between the parties does not preclude state law claims from being brought concurrent with FLSA claims. In the alternative, Plaintiffs request leave to amend if the complaint is found to be deficient.

Veolia's reply reiterates that Plaintiffs' state law claims require analysis of the CBA in order to determine whether Plaintiffs are entitled to payment for travel time and, if so, what wages are owed to Plaintiffs. Veolia argues that these claims are therefore preempted by § 301 of the LMRA. Veolia also advances three additional reasons why Plaintiffs' state law claims should be dismissed. First, Veolia argues that Plaintiffs' opposition was untimely and that Plaintiffs did not provide any explanation to excuse their untimely response.[2] Second, Veolia argues that Plaintiffs' opposition fails to address the breach of contract claims (Counts III–IV), which is equivalent to conceding

---

[2] The Eastern District of Missouri Local Rules ("L.R.") provide that a party opposing a motion must file a memorandum in opposition within seven days after being served with the motion. L.R. 7-4.01(B). Three additional days may be added to this period in accordance with Fed. R. Civ. P. 6(d). Plaintiffs did not submit an opposition within the ten-day time period prescribed by L.R. 7-4.01 and Rule 6(d). The Court, however, issued an Order to Show Cause (Doc. No. 16) on June 30, 2015, requiring Plaintiffs to show cause in writing, on or before July 7, 2015, why Veolia's motion to dismiss should not be granted. Plaintiffs filed a memorandum opposing the motion to dismiss within this time frame. Therefore, the Court will consider Plaintiffs' opposition brief as duly submitted.

4

that these claims should be dismissed for the reasons stated in Veolia's motion. Finally, Veolia asserts that the CBA constitutes an express contract governing the employment relationship between the parties, and that it is the CBA, not the FLSA claims, which precludes Plaintiffs' quantum meruit and unjust enrichment claims (Counts V–VIII).

## DISCUSSION

To survive a motion to dismiss for failure to state a claim, a plaintiff's allegations must contain "sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). The reviewing court must accept the plaintiff's factual allegations as true and construe them in plaintiff's favor, but it is not required to accept the legal conclusions the plaintiff draws from the facts alleged. *Iqbal*, 556 U.S. at 678; *Retro Television Network, Inc. v. Luken Commc'ns, LLC*, 696 F.3d 766, 768–69 (8th Cir. 2012). A court must "draw on its judicial experience and common sense," and consider the plausibility of the plaintiff's claim as a whole, not the plausibility of each individual allegation. *Zoltek Corp. v. Structural Polymer Grp.*, 592 F.3d 893, 896 n.4 (8th Cir. 2010).

As a preliminary matter, the Court must determine whether documents attached as exhibits to Veolia's memorandum in support of its motion may properly be considered in resolving this motion to dismiss under Federal Rule of Civil Procedure 12(b)(6). "Though matters outside the pleading may not be considered in deciding a Rule 12 motion to dismiss, documents necessarily embraced by the complaint are not matters outside the pleading." *Gorog v. Best Buy Co.*, 760 F.3d 787, 791 (8th Cir. 2014) (quoting

*Ashanti v. City of Golden Valley*, 666 F.3d 1148, 1151 (8th Cir. 2012)). The "contracts upon which a claim rests are evidently embraced by the pleadings." *Id.* (citation omitted). "In a case involving a contract, the court may examine the contract documents in deciding a motion to dismiss." *Stahl v. U.S. Dep't of Agric.*, 372 F.3d 697, 700 (8th Cir. 2003).

A court may examine contract documents embraced by the complaint even if the plaintiff does not attach or incorporate such documents by reference, because "a plaintiff 'cannot defeat a motion to dismiss by choosing not to attach' to the complaint documents upon which it relies." *Lewey v. Vi-Jon, Inc.*, No. 4:11-CV-1341-JAR, 2012 WL 1859031, at *2 (E.D. Mo. May 22, 2012) (quoting *Silver v. H & R Block, Inc.*, 105 F.3d 394, 397 (8th Cir. 1997)). "[T]he plaintiff must supply any documents upon which its complaint relies, and if the plaintiff does not provide such documents the defendant is free to do so." *BJC Health Sys. v. Columbia Cas. Co.*, 348 F.3d 685, 688 (8th Cir. 2003). Plaintiffs' claims for breach of contract necessarily rely on at least one contract. Veolia provided a CBA which it contends—and which Plaintiffs do not dispute—is the only existing contract governing the employment relationship between the parties. Thus, in deciding the motion to dismiss, it is appropriate to look to the CBA submitted by Veolia.

**A.    LMRA Preemption**

The Supreme Court "has singled out claims pre-empted by § 301 of the LMRA" for "special treatment," on the ground that "the preemptive force of § 301 is so powerful as to displace entirely any state cause of action for violation of contracts between an employer and a labor organization." *Metro. Life Ins. Co. v. Taylor*, 481 U.S. 58, 64

(1987). "Any such suit is purely a creature of federal law, notwithstanding the fact that state law would provide a cause of action in the absence of § 301." *Id.* Therefore, any state law claim founded on rights created by a CBA is preempted under § 301, *Teamsters v. Lucas Flour Co.*, 369 U.S. 95, 102–03 (1962), as is any claim whose resolution is substantially dependent upon or "inextricably intertwined" with interpretation of the terms of a CBA, *Allis-Chalmers Corp. v. Lueck*, 471 U.S. 202, 213 (1985).[3]

The Supreme Court has also stated, however, that "not every dispute concerning employment, or tangentially involving a provision of a collective-bargaining agreement, is pre-empted by § 301." *Id.* at 211. For example, merely referencing a CBA in order to determine bargained-for wage rates in computing a penalty does not warrant preemption. *Livadas v. Bradshaw*, 512 U.S. 107, 125 (1994). Thus, federal labor-contract preemption must be decided on a case-by-case basis. *Lueck*, 471 U.S. at 220.

The Eighth Circuit has endorsed a two-step analysis for resolving § 301 preemption issues. "The proper starting point for determining whether interpretation of a CBA is required in order to resolve a particular state law claim is an examination of the claim itself." *Trs. of Twin City Bricklayers Fringe Ben. Funds v. Superior Waterproofing, Inc.*, 450 F.3d 324, 331 (8th Cir. 2006). If the state-law claim is "based on" a provision of a CBA, it is preempted. *Bogan v. Gen. Motors Corp.*, 500 F.3d 828,

---

[3] As Veolia correctly notes, the complete preemption of Plaintiffs' state law claims may demonstrate that these claims are necessarily federal in character for purposes of this Court's subject matter jurisdiction. Regardless, the Court finds that the state law claims are so related to the federal FLSA claims that they form part of the same case or controversy, and the Court will exercise supplemental jurisdiction over them pursuant to 28 U.S.C. § 1367.

7

832 (8th Cir. 2007). Even if the claim is not directly based on a CBA, if the claim's resolution is "dependent upon an analysis" of a CBA, it is also preempted. *Id.* Analysis of the CBA is required where the elements of the claim are "inextricably intertwined with consideration of the terms of the labor contract." *Id.* at 833 (quoting *Lueck*, 471 U.S. at 220).

### 1. Breach of contract claims: Counts III & IV

The Supreme Court has explained that "a suit in state court alleging a violation of a provision of a labor contract must be brought under § 301 and be resolved by reference to federal law." *Lueck*, 471 U.S. at 210. A state-law claim that a party violated the terms of a CBA is therefore completely preempted by § 301 of the LMRA. *See Oberkramer v. IBEW-NECA Serv. Ctr., Inc.*, 151 F.3d 752, 756 (8th Cir. 1998) (holding state breach of contract claim was "clearly preempted under § 301" where the allegedly breached contract was a collective bargaining agreement).

Here, each Plaintiff alleges that he "entered in to [sic] contracts with Defendant whereby Plaintiffs [sic] agreed to perform services as part of his employment by Defendant, and Defendant agreed to compensate Plaintiff for all services based upon specified hourly rates of pay [hereinafter 'the contracts']." (Doc. No. 4 at ¶¶ 34, 41.) Plaintiffs further allege that "Defendant breached and violated the contracts by failing to pay Plaintiff for time worked." (Doc. No. 4 at ¶¶ 35, 42.) Despite their breach of contract claims, Plaintiffs do not attach or reference any contractual documents, nor do they provide any additional information regarding the contracts allegedly breached. Plaintiffs' complaint does not mention a CBA governing their employment relationship

8

with Veolia.

Veolia contends that "Veolia and the International Union of Painters and Allied Trades, AFL-CIO, are parties to a CBA, which sets forth the comprehensive terms and conditions of Plaintiffs' employment with Veolia." (Doc. No. 14 at 3). Further, according to Veolia, the CBA is the only possible contract that could have been breached, since Plaintiffs were represented by a sole and exclusive bargaining representative. (Doc. No. 14 at 9.) Plaintiffs do not dispute the existence of the CBA or its validity. Plaintiffs also do not dispute that the CBA is the only operative contract governing their employment relationship with Veolia. Although Plaintiffs state that their "right to be paid for time they actually worked exists independent of the terms of the CBA," Plaintiffs do not identify any other source of contractual right.[4] Thus, Plaintiffs' breach of contract claims apparently allege violations of the CBA between Veolia and the International Union of Painters and Allied Trades, AFL-CIO. Because these claims are based on a CBA, they are preempted by § 301 of the LMRA.

### 2. Quasi-contractual claims: Counts V–VIII

---

[4] It is worth emphasizing that Plaintiffs have only failed to plead or otherwise allude to any *contractual* rights other than those created by the CBA. Plaintiffs' claims under the Fair Labor Standards Act (Counts I and II), which Veolia has answered separately (Doc. No. 12) and which are not at issue here, represent a potential *statutory* right to be paid for time worked that is, in fact, independent of the CBA. Likewise, if Plaintiffs had stated claims under a state wage-and-hour statute, such claims may have represented an additional *statutory* right to compensation independent of the CBA. *See Burnside v. Kiewit Pac. Corp.*, 491 F.3d 1053 (9th Cir. 2007) (finding that the California Industrial Commission Wage Order created a state law right, independent of the CBA between the parties, to compensation for travel time where travel was required by employer). Because Plaintiffs have not asserted a statutory claim under state law, however, their analogy to *Burnside* is unavailing.

9

a. Plaintiffs may simultaneously plead alternative theories of recovery

Setting aside the issue of preemption momentarily, Veolia contends that Plaintiffs' quasi-contractual claims should be dismissed because "a plaintiff cannot recover under equitable or quasi contractual theory when he or she has entered into an express contract concerning the very same subject matter for which they seek to recover." (Doc. No. 14 at 13.) The fact that Plaintiffs cannot simultaneously *recover* for both breach of express contract and quantum meruit/unjust enrichment, however, does not preclude plaintiffs from *pleading* both theories. *Chem Gro of Houghton, Inc. v. Lewis Cnty. Rural Elec. Co-op. Ass'n.*, No. 2:11-CV-93-JCH, 2012 WL 1025001, at *3 (E.D. Mo. Mar. 26, 2012). The Federal Rules of Civil Procedure specifically permit a party to "set out two or more statements of a claim or defense alternatively or hypothetically, either in a single count or defense or in separate ones." Fed. R. Civ. P. 8(d)(2). The liberal policy of Rule 8(d) permits pleading multiple claims "regardless of consistency." Fed. R. Civ. P. 8(d)(3).

Veolia nevertheless urges that Plaintiffs' incorporation of the preceding allegations in their quasi-contractual claims mandates dismissal. In the quantum meruit and unjust enrichment claims, each Plaintiff states that he "reasserts and re-alleges the allegations set forth above." (Doc. No. 4 at ¶¶ 47, 54, 61, 68.) While technically Veolia is correct that this incorporates the breach of contract allegations into the quasi-contract claims, Plaintiffs are permitted to plead both breach of contract and quasi-contract theories regardless of consistency. The Court will not dismiss the equitable claims simply because Plaintiffs failed to explicitly plead in the alternative using the precise wording Veolia would require. *See Chem Gro*, 2012 WL 1025001 at *3 ("The Court will

10

not require hypertechnicality in pleading these claims in the alternative and will not dismiss Plaintiff's unjust enrichment claim based on the failure to use more precise wording.").

Veolia also asserts that the mere existence of an express contract governing the parties' employment relationship, the CBA, precludes Plaintiffs' quasi-contractual claims. Under Missouri law, the existence of an express and unambiguous employment agreement may limit an employee's recovery under quasi-contractual theories. *See Holland v. Tandem Computers Inc.*, 49 F.3d 1287, 1288 (8th Cir. 1995) (plaintiff's quantum meruit recovery was limited to the compensation provided in the parties' unambiguous employment agreement, and employer was not unjustly enriched because it had paid all amounts due under the agreement). Veolia, however, conflates this limitation on recovery with a limitation on pleading. The fact that the CBA may limit or preclude Plaintiffs' recovery under quasi-contractual theories does not prohibit Plaintiffs from pleading such theories.

    b. <u>Plaintiffs' quasi-contract claims are preempted by § 301 of the LMRA</u>

Under Missouri law, quantum meruit and unjust enrichment represent two theories of recovery based on the same underlying quasi-contractual cause of action. *Johnson Grp., Inc. v. Grasso Bros.*, 939 S.W.2d 28, 30 (Mo. Ct. App. 1997). For purposes of a motion to dismiss, "the difference is immaterial." *Doug Volz v. Provider Plus, Inc., Jeff Serafin*, No. 4:15-cv-0256-TCM, 2015 WL 3621113, at *3 n.3 (E.D. Mo. June 9, 2015). Plaintiffs' quantum meruit and unjust enrichment claims also rely on the same factual allegations, and therefore the same analysis applies to each of Plaintiffs' quasi-

contractual counts.

The Supreme Court has explained that "[i]f the policies that animate § 301 are to be given their proper range … the pre-emptive effect of § 301 must extend beyond suits alleging contract violations." *Lueck*, 471 U.S. at 210. Therefore, even though Plaintiffs' quasi-contractual claims do not allege violations of the CBA directly, if resolution of these claims depends upon or is "inextricably intertwined" with interpretation of the terms of the CBA, then these claims are also preempted by § 301. *Id.* at 213; *see also Lingle v. Norge Div. of Magic Chef, Inc.*, 486 U.S. 399, 405–06 (1988) (explaining that "if the resolution of a state-law claim depends upon the meaning of a collective-bargaining agreement," the claim is preempted).

The mere existence of a CBA does not automatically preempt state-law quasi-contractual claims. For example, where an employee seeks to recover "a form of compensation wholly extraneous to the CBA," unjust enrichment does not depend upon interpretation of the CBA and therefore is not preempted. *Hernandez v. Harvard Univ.*, No. 12-11978-DPW, 2013 WL 1330842, at *2 (D. Mass. March 28, 2013).

However, because quasi-contractual claims between parties subject to a CBA are frequently intertwined with interpretation of the CBA, they "are often completely preempted" by § 301. *Cefarrati v. JBG Props., Inc.*, 75 F. Supp. 3d 58, 66 (D.D.C. 2014). This is particularly true where quasi-contractual claims seek recovery for uncompensated time that is covered or contemplated by the CBA. *See Cavallaro v. UMass Memorial Healthcare, Inc.*, 678 F.3d 1, 4–6 (1st Cir. 2012) (holding that quantum meruit/unjust enrichment claims for work performed during meal breaks, work performed

before and after shifts, and time spent attending training sessions would "necessarily depend upon analysis of the CBA's terms"); *see also Zupancich v. U.S. Steel Corp.*, No. 08-5847-ADM/RLE, 2009 WL 1474772, at *3 (D. Minn. May 27, 2009) (dismissing unjust enrichment and quantum meruit claims for unpaid time between swiping-in and arriving at employee's work station because the claims were "inextricably intertwined with the CBA"); *Cefarrati*, 75 F. Supp. 3d at 65–67 (finding employee's unjust enrichment claim for work "outside the scope of his existing employment responsibilities" required "analysis of the scope of employment established by the CBA"); *Carter v. Tyson Foods, Inc.*, No. 3:08-CV-209, 2009 WL 4790761, at *11 (N.D. Ind. Dec. 3, 2009) (dismissing quantum meruit claim for time spent donning and doffing required safety equipment because it would require "extensive application of the CBA's terms in order to resolve the underlying issue regarding whether the [p]laintiffs had been fully compensated for the work they performed").

Here, Plaintiffs seek recovery for uncompensated travel time to and/or from their assigned work site. (Doc. No. 4 at ¶¶ 7–12.) The CBA governing Plaintiffs' employment with Veolia explicitly references travel time, setting out mileage reimbursement rates for particular classes of employees and specifying certain cases where "[t]here shall be no payment for travel." (Doc. No. 14, Ex. 2 at Addendum Art. VI, Section 3.) Plaintiffs' claims are not independent of or extraneous to the CBA, because the CBA expressly contemplates work-related travel. Additionally, determining the amount of compensation owed to Plaintiffs, if any, will require interpretation of the travel time provisions of the CBA. Plaintiffs' quasi-contractual claims are therefore inextricably intertwined with the

terms of the CBA and are preempted by § 301 of the LMRA.

B.      **Failure to Exhaust and Statute of Limitations**

Veolia further argues that Plaintiffs fail to state a claim under § 301 of the LMRA because they failed to exhaust the CBA's grievance procedures and because such claims are barred by the applicable statute of limitations. However, because Plaintiffs' complaint contains no claim for relief under § 301, the Court need not decide these issues. Plaintiffs' state law claims are preempted by § 301 and will therefore be dismissed. *See Moore v. DaimlerChrysler Corp.*, No. 4:06CV757-CDP, 2007 WL 803498, at *3 (E.D. Mo. Mar. 14, 2007) (dismissing state law claims as preempted by § 301 without attempting to recast as LMRA claims or analyzing exhaustion of CBA grievance procedures); *Oberkramer v. IBEW-NECA Serv. Ctr.*, No. 4:97CV225-DJS, 1997 WL 366870, at *3 (E.D. Mo. Apr. 9, 1997), *aff'd*, 151 F.3d 752, 757 (8th Cir. 1998) (dismissing state law claims as preempted by § 301 without prejudice to plaintiff's subsequent assertion of § 301 claims).

C.    **Leave to Amend**

Plaintiffs request leave to amend their complaint in order to correct deficiencies and address the issues raised in Veolia's motion to dismiss. However, Plaintiffs have neither attached a proposed amended complaint nor explained what the proposed corrections would entail. Plaintiffs are free to file a motion for leave to amend, attaching a proposed amended complaint properly pleading any viable claims. But as it stands, and for the reasons discussed above, Plaintiffs' state law breach of contract and quasi-contract claims (Counts III–VIII) are dismissed as preempted by § 301 of the LMRA.

## CONCLUSION

Accordingly,

**IT IS HEREBY ORDERED** that Defendant's motion to dismiss Counts III – Viii of Plaintiffs' complaint is **GRANTED**.  (Doc. No. 13.)

*Audrey G. Fleissig*
AUDREY G. FLEISSIG
UNITED STATES DISTRICT JUDGE

Dated this 14th day of December, 2015.